UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VERTRICE BROWN | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | )   Case No. 4:18-CV-00719-JCH <br> ) |
| DOLGENCORP, LLC, | ) <br> ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

In this action, Plaintiff Vertrice Brown ("Plaintiff"), alleges that her former employer, Defendant Dolgencorp, LLC ("Defendant"), discriminated against her on the basis of her disability by terminating her employment, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  She also alleges a violation of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Defendant now moves for summary judgment (Doc. 36) and, for the reasons explained below, its motion will be granted.

### **I. Facts[1] and Procedural Background**

Plaintiff worked for Defendant at various times and in multiple locations since 2011. The most recent position Plaintiff held was that of store manager at a Dollar General in St. Charles, Missouri, where she was employed in 2016.  Dollar General store managers are responsible for the implementation of all store processes, including staging, stocking, and storage of merchandise, and are often the only employee in a store at any given time.  The essential physical requirements

---

[1]   The facts were taken from the parties respective Statements of Material Facts and the exhibits attached thereto. *See* Docs. 38, 39, and 43.

1

for the store manager position include frequent walking, standing, bending, stooping, and kneeling, as well as occasional climbing on ladders.

Plaintiff was diagnosed with bilateral osteoarthritis in her knees, for which she was seeing Dr. John McAllister ("Dr. McAllister").  Plaintiff visited Dr. McAllister on June 1, 2016, at which appointment he imposed various work restrictions on Plaintiff, including "no heights, [and] no repetitive bending, stooping or squatting."  Doc. 38-5.  Dr. McAllister specified that "if modified work is not available [Plaintiff] is deemed unable to work."  *Id*.  After that appointment, Plaintiff contacted her District Manager, Bobbi Whittaker ("Whittaker"), to inform her of the work restrictions, and Whittaker directed Plaintiff to contact Dollar General Human Resources department ("HR").  Plaintiff subsequently contacted HR, and was informed that she would need to take medical leave.  HR also instructed her to contact Defendant's third party leave administrator, Matrix ("Matrix").  Plaintiff did so, and Matrix informed her of the required paperwork that would need to be submitted in order for leave under the Family and Medical Leave Act ("FMLA") to be approved, including a Department of Labor Certificate of Health Care Provider form ("DOL Certification"), which would have to be filled out and submitted by her physician in order to substantiate Plaintiff's need for leave.  It is Defendant's consistently applied policy to require employees to have the DOL Certification submitted to Matrix when requesting FMLA leave, and such leave is not generally approved unless a properly completed DOL Certification is received.

Dr. McAllister appeared to have submitted the DOL Certification, at Plaintiff's request, on or around June 2, 2016, but it was not completed properly.  On June 3, 2016, Matrix sent to Brown a letter informing her that the information in the DOL Certification was incomplete. The letter further stated that they had faxed another copy to her doctor, and that it was Plaintiff's

"responsibility to follow up with [her] doctor to ensure the highlighted areas of the form are completed and returned to Matrix no later than June 22, 2016," or her leave would be denied. Doc. 38-4 at 23. The letter additionally informed Plaintiff that any time off that was not approved as FMLA leave may result in her termination. On June 17, 2016, Matrix received the correctly completed DOL Certification from Dr. McAllister, which certified the first two weeks of Plaintiff's leave of absence, and Plaintiff's FMLA leave was approved for the period between June 1 and June 14, 2016.

On June 16, 2016, Plaintiff informed Matrix that her doctor had scheduled her to have surgery on one of her knees on July 13, 2016. Plaintiff received a voicemail from Matrix on June 21, 2016, which stated, in relevant part, that Matrix was "calling to inform [Plaintiff] that [her] leave of absence was approved only through June 14," and that, "to extend [Plaintiff's] leave we will need documentation from the doctor's office." Doc. 38-6. Plaintiff called Matrix on June 21, 2016, and left a voicemail stating that she had called her doctor's office, and that the office needed Matrix to fax to them an extension request. Upon that request, Matrix faxed the required form to Plaintiff's doctor to support her extended leave request. However, Matrix has no record of ever having received the additional DOL Certification form from Plaintiff's doctor as needed to approve FMLA leave beyond June 14, 2016. Plaintiff asserts that the "appropriate paperwork" was forwarded to Matrix, but the document[2] she submits to support that assertion is not the DOL Certification. *See* Doc. 39-4.

Plaintiff next received a letter, dated July 1, 2016, from Defendant, informing her that Matrix had completed their review of the documentation received regarding her FMLA leave, and

---

[2] The exhibit Plaintiff submits to support her assertion is not the required DOL Certification, and does not contain the same information required on that form. Doc. 39-4. Plaintiff's Exhibit 4 is merely a Return to Work form dated June 21, 2016, and signed by Plaintiff's doctor, indicating that she was not yet released to work.

3

that while June 1, 2016, through June 14, 2016, had been approved, any further leave from June 15, 2016, through July 13, 2016, had been denied. Doc. 38-4. The letter went on to state that if "additional information is provided . . . [regarding Plaintiff's] medical condition . . . it will be reviewed by Matrix." *Id*. The letter further provided that if Plaintiff had any questions about the leave process or had information to add to her leave request, to contact her Matrix claims examiner. *Id*. Finally, the letter stated that any time off not approved "may result in disciplinary action up to and including discharge." *Id*.

Plaintiff also received a voicemail from Matrix on July 1, 2016, informing her of the denial of further FMLA leave beyond June 14, 2016. Plaintiff called Matrix on July 6, 2016, indicating that she was returning their call, and when Matrix called her back they were unable, for reasons that are not clear on the record, to leave a voicemail. In late August, 2016, Plaintiff spoke to her manager, Whittaker, about her desire to return to work, but did not indicate a possible return date. On August 29, 2016, Whittaker emailed Defendant's Leave Administration office about Plaintiff's leave status, stating that "[s]he has been out on leave since I took over this district so I do not get email updates on her leave status." On August 31, 2016, Defendant's Leave Administration office emailed Whittaker, stating that Plaintiff's "leave extension was denied and her leave [was] closed so there haven't been any email updates. We will send her a 10 day letter and see if she responds." Doc. 38-9 at 5.

Defendant then sent Plaintiff a letter, dated August 31, 2016, and mailed to the address Plaintiff had on file with Defendant (the "10-Day Letter"), informing her that she was "currently on an unapproved absence because [her] approved leave ha[d] expired," and that she must "contact Dollar General HR Shared Services, Leave Administration within ten days from the date of [the] letter to discuss [her] employment status." Doc. 38-8. The 10-Day Letter went on to state that if

4

Plaintiff failed to contact Dollar General's Leave Administration within the next 10 days, her employment would be terminated. *Id*. Plaintiff did not timely contact Dollar General's Leave Administration department in response to the 10-Day Letter. *See* Doc. 43 at 8-9.[3] Plaintiff did text her manager, Whittaker, on September 7 and September 14, 2016, about the possibility of meeting at the store. However, Whittaker did not know about Plaintiff's termination when she was texting with Plaintiff, and did not learn that Plaintiff had been dismissed until after Plaintiff informed her of the same on September 16, 2016. Plaintiff was terminated on September 14, 2016, with an effective date of September 10, 2016.

Plaintiff asserts that she did not receive the 10-Day Letter until September 16, 2016, after the period in which to respond had already expired. On September 19, 2016, Plaintiff updated her address on file with Defendant, and called the Dollar General Employee Response Center at the number provided in the 10-Day Letter. She informed the employee to whom she spoke that she had not received the letter until after the time period to respond had passed. Defendant's records indicate that the employee informed Plaintiff that she had been "removed from the system" as of September 10, 2016, because Defendant had not heard from her within the ten-day period. The employee to whom Plaintiff spoke informed Plaintiff that she could dispute her termination through Defendant's ADR program. Plaintiff subsequently submitted a termination dispute form on September 25, 2016.

---

[3] Plaintiff, in her response to Defendant's Statement of Material Facts, denies that she failed to contact the Leave Administration department as required by the 10-Day Letter, but she cites to no evidence in the record that could refute this fact. Fed. R. Civ. P. 56(c)(1) provides that a party asserting that a fact "is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record . . .." As Plaintiff does not support her denial of this fact with citation to any material from the record, the fact is deemed admitted. *See Jones v. United Parcel Serv., Inc.,* 461 F.3d 982, 991 (8th Cir. 2006) (district court properly deemed facts admitted that were not properly controverted); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion.").

Upon review, Defendant upheld Plaintiff's termination, stating that "Vertrice was notified by Matrix on 7/1 regarding her leave denial for 6/16/7/13 as it was not certified; There are no records of any leave being requested after 7/13 and no contact from Vertrice after 7/6 until 9/19 when she called upset that she didn't get her letter until 9/16.  Vertrice's 10 day letter was sent 8/31.  Her termination was processed on 9/14 effective as of 9/10.  On 9/19 she called to change her address."  An employee from Defendant's Leave Administration office spoke with Plaintiff on September 29, 2016, informing her that her termination would stand due to the expiration of her approved leave, and additionally informing her that she was eligible for rehire.  At some point, Plaintiff did apply for the position of assistant manager with Dollar General, but was not hired at that time.

On May 8, 2018, Plaintiff filed the instant action.  *See* Doc. 1.  Plaintiff thereafter filed her First Amended Complaint on October 30, 2018, alleging that Defendant discriminated against her on the basis of her disability by terminating her employment in violation of the ADA, and that Defendant violated her right to medical leave under the FMLA by interfering with that right, as well as by discriminating against her and retaliating against her for exercising her rights under the statute.[4].  *See* Doc. 14.  Defendant filed a motion for summary judgment on all Plaintiff's claims.  For the following reasons, the Court will grant Defendant's motion for summary judgment.

---

[4]   Plaintiff, in her brief in opposition to Defendant's Motion for Summary Judgment, discusses certain claims that were not included in her Amended Complaint.  Specifically, Plaintiff alleges that Defendant failed to accommodate her disability, retaliated against her in violation of the ADA, and failed to re-hire her after her termination.  Defendant correctly notes that Plaintiff's Amended Complaint did not allege claims under the ADA for retaliation, failure to accommodate, or failure to re-hire, and Plaintiff may not, therefore, raise them in opposition to summary judgment.  To the extent Plaintiff may be attempting to assert claims that are not in her Amended Complaint, the Court will not consider such, as it is bound by the allegations found therein.  *See, e.g., Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012) (a district court properly refuses to consider allegations that were not pled); *Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1057 (8th Cir. 2004) (parties may not manufacture at summary judgment claims which were not pled); *Scott v. Wells Fargo Bank, N.A.*, No. CIV. 10-3368 MJD/SER, 2011 WL 3837077, at *10 (D. Minn. Aug. 29, 2011) ("In essence, by raising these representations in his opposition brief, Plaintiff is attempting to amend his Amended Complaint to include new allegations of fraud.  Such action is impermissible."); *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*,

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations omitted).

In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

---

868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion . . .. To hold otherwise would mean that a party could unilaterally amend a complaint at will . . . simply by raising a point in a brief.") (internal citations omitted); *see also Spectra Merck Int'l, Inc. v. Euler ACI Collection Servs., Inc*., No. 03 C 899, 2004 WL 1393600, at *6 n. 4 (N.D. Ill. June 18, 2004) (A "plaintiff cannot amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

7

### III. DISCUSSION

#### A. ADA Wrongful-Termination Claim

The ADA bars private employers from discriminating against a qualified individual on the basis of an actual or perceived disability. *See Faidley v. United Parcel Serv. Of America, Inc*., 889 F.3d 933, 940 (8th Cir. 2018); 42 U.S.C. §§ 12102 and 12112(a). A "qualified individual" under the ADA is defined as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To prove a wrongful-termination claim, Plaintiff must show that: (1) she is a qualified individual with a disability, as defined by the ADA[5]; (2) she suffered an adverse employment action; and (3) the adverse action was based on her disability. *Henderson v. Ford Motor Co*., 403 F.3d 1026, 1034 (8th Cir. 2005). "Under the ADA, prohibited discrimination includes discrimination against a qualified individual because of his or her disability (*i.e*., intentional discrimination), *see* 42 U.S.C. § 12112(a)-(b)(1), as shown by evidence of disparate treatment or other proof that will vary according to the specific facts of the case." *Lipp v. Cargill Meat Solutions Corp*., 911 F.3d 537, 543 (8th Cir. 2018) (citing *Young v. Warner-Jenkinson Co., Inc.,* 152 F.3d 1018, 1022 (8th Cir. 1998).

In the absence of direct evidence of an employer's discriminatory intent, a plaintiff may offer indirect evidence of disability discrimination. *Id*. at 544. In cases where a plaintiff relies on indirect evidence to prove intentional discrimination under the ADA, courts apply the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under

---

[5] The ADA, as amended, defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . ." 42 U.S.C. § 12102(1). An individual is "regarded as having such an impairment" if that individual has been "subjected to an action prohibited under this chapter because of an actual *or perceived* physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id*. § 12102(3)(A) (emphasis added).

8

the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination by showing that she was disabled under the ADA, was qualified to perform the essential functions of her job, and there was "a causal connection between an adverse employment action and the disability." *Lipp,* 911 F.3d at 544. If the plaintiff establishes her prima facie case, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." *Id*. The employer's responsibility to present proof of a non-discriminatory, legitimate justification for its action is not an onerous task. *See Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 954 (8th Cir. 2012). Once an employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to show that the employer's proffered reason for termination was a pretext for discrimination. *Lipp*, 911 F.3d at 544. To demonstrate pretext, the employee must show that the employer's proffered reason is "unworthy of credence." *Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 867 (8th Cir. 2006). An employee may demonstrate pretext in multiple ways, including (1) by demonstrating that the employer's proffered reason has no basis in fact; (2) that similarly situated employees were treated more leniently; (3) that the employer changed its explanation for why it fired the employee; and (4) that the employer deviated from its policies. *Phillips v. Mathews*, 547 F.3d 905, 913 (8th Cir. 2008). *See also EEOC v. Prod. Fabricators, Inc.,* F.3d 963, 970 (8th Cir. 2014) ("A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner. . ..") (alteration in original).

Defendant argues that Plaintiff has failed to demonstrate that she was disabled, or that anyone regarded her as disabled in a way that substantially limited a major life activity, and therefore, she has failed to establish a prima facie case of discrimination under the ADA. In support of this argument, Defendant points to Plaintiff's testimony that her osteoarthritis does not

9

substantially limit her activities, such as walking or working, and that her condition does not "deter [her] work or anything." Doc. 38 at ¶ 16.  However, it matters not whether Plaintiff has demonstrated that she was disabled or regarded as disabled.  Even assuming arguendo that she has established a prima facie case, Defendant has shown a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff cannot show that reason was a pretext for discrimination.

Defendant maintains that it fired Plaintiff because she failed to respond to the August 31, 2016, 10-Day Letter.  At that time, Plaintiff's approved leave had expired, she had been on unapproved leave for over two months, and she had failed to submit the required documentation to support extension of her leave.  It is clearly a legitimate employment decision to terminate an employee for not following established policies that are applicable to and required of all employees.  Indeed, courts in the Eighth Circuit have repeatedly held that violation of company policy is a legitimate, non-discriminatory rationale for terminating an employee.  *See Ebersole v. Novo Nordisk, Inc.,* 758 F.3d 917, (8th Cir. 2011) (summary judgment affirmed where employee was terminated for violating company policy by falsifying information about client visits); *Hill v. Walker*, 918 F. Supp. 819, 834-35 (E.D. Ark. 2013) (granting summary judgment where employee failed to return to work when instructed to do so); *Matthews v. Bank of America*, 2011 WL 6884795 (8th Cir. 2011) (affirming summary judgment where employee failed to provide requested medical documentation to support her absence as required by company policy); *Norman v. Union Pacific R.R. Co.,* 606 F.3d 455, 460 (8th Cir. 2010) (affirming summary judgment where employee failed to submit a return to work release).

Upon consideration of the record, the Court finds that Plaintiff cannot show that Defendant's proffered reason for her termination was pretextual.  *See Lipp*, 911 F.3d at 544.  Here,

10

Defendant terminated Plaintiff because it was following its own policies with respect to gaining approval for FMLA medical leave, and Plaintiff has presented no evidence suggesting that other similarly-situated employees were treated more favorably, or differently in any way. Additionally, Defendant has consistently stated that Plaintiff was discharged because she failed to respond to the 10-Day Letter sent to her because Defendant determined that she was out on unapproved medical leave. *See Fatemi v. White*, 775 F.3d 1022, 1048 (8th Cir. 2015) (noting that a plaintiff may demonstrate pretext by pointing to an employer's shifting explanations for an adverse employment decision). Plaintiff has also failed to present any evidence that Defendant has ever shifted its explanation, or that its consistently-stated reason for her termination—her failure to respond to the 10-Day Letter issued because of unapproved medical leave—was false.

Additionally, when questioned at her deposition about whether she believed there was anyone associated with Defendant who held any kind of animus or ill will towards her because of her disability, Plaintiff answered, "No." *See* Doc. 38-1 at 28. When asked whether anybody ever made any negative comments to you about her medical condition or disability, Plaintiff again answered, "No." *Id*. When asked whether her direct manager or any other member of management had ever made any negative comments about her being out on leave or having a medical condition, she said, "No." *Id*.

Finally, Plaintiff has failed to demonstrate that Defendant's proffered reason for her termination was not based in fact. Much of Plaintiff's argument in opposition to summary judgment centers around her contention that Defendant was mistaken in its belief that she failed to submit the required documentation to support an extension of her FMLA leave, and accordingly, there was no justification for issuing the 10-Day Letter. However, even if she were correct in that assertion, this would not change the Court's analysis. The Court's inquiry is limited to whether

11

Defendant genuinely believed that Plaintiff had failed to submit the required documentation, which in turn led Defendant to issue the 10-Day Letter, and if so, whether this belief was the reason for her discharge.

It is undisputed that Defendant has no record of Plaintiff providing a DOL Certification form that substantiated a need for FMLA leave past June 14, 2016. Doc. 38-13 at ¶21. Dollar General, through Matrix, repeatedly asked Plaintiff for additional information to substantiate her leave beyond the two weeks supported by the DOL Certification form that she submitted for her leave in early June. Plaintiff received both a letter from Matrix and a phone call informing her that she needed to provide further medical documentation to support additional leave. Neither Dollar General nor Matrix has any record of Plaintiff responding to those communications by providing the required DOL Certification. Plaintiff argues that she in fact did have "the appropriate paperwork sent to Matrix on July 2, 2016, for her medical leave up to October 13, 2016." Doc. 39 at ¶ 72. However, the exhibit Plaintiff submits to support that assertion is not the required DOL Certification, and does not contain the same information required on that form. *See* Doc. 39-4. Plaintiff's Exhibit 4 is merely a Return to Work Certification form dated June 21, 2016, and signed by Plaintiff's doctor, indicating that she was not yet released to work. *Id*.

It is additionally undisputed that on August 31, 2016, Plaintiff was sent a 10-Day Letter asking her to contact Defendant to discuss her employment status, because she had been out on unapproved leave for more than two months at that point. Plaintiff did not respond to the letter within the ten-day period, and, because of that failure to respond, her employment was terminated on September 10, 2016. Plaintiff argues that she should not have been terminated for her failure to respond, as she did not receive the letter until the ten-day window had passed.

While it is unfortunate that Plaintiff did not receive the 10-Day Letter until after the time to respond had passed, that fact does not in any way indicate that Defendant's proffered reason for her termination was pretextual. Whether Defendant's employment decision was mistaken, unwise, or harsh is not material to the Court's analysis. The Eighth Circuit has long held that courts are not concerned with the correctness or wisdom of the reason given for the employer's decision, but only "whether [the proffered reason for termination] was the real reason for the termination and not a pretext for [disability based] discrimination." *Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703, 712 (8th Cir. 1984). *See also Ward v. International Paper Co.,* 509 F.3d 457, 462 (8th Cir. 2007) ("[I]t is not the role of this court to sit as a 'super-personnel department' to second guess the wisdom of a business's personnel decisions.") (quoting *Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 957 (8th Cir. 2001); *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 935 (8th Cir. 2006) ("The consideration in evaluating pretext is whether the employer honestly believed the employee violated the company code of conduct or policy, not whether the employer was factually correct in its conclusion.").

Here, Plaintiff argues that Defendant was mistaken about her failure to follow company policy, but she offers no evidence to refute that Defendant genuinely believed that she had, and that such genuine belief led to her termination. Therefore, there is no issue of fact regarding whether Defendant's non-discriminatory reason for Plaintiff's termination was pretext for disability discrimination. As such, Plaintiff's ADA claim fails, and Defendant is entitled to summary judgment on that claim.

### B. FMLA Claim

Plaintiff alleges Defendant violated her rights under the FMLA by depriving her of leave to which she was entitled and taking adverse action against her for exercising her rights under that

statute. The FMLA entitles any "eligible employee" to a total of twelve work weeks of leave during any twelve-month period to care for a "serious health condition" that renders the employee unable to perform the functions of his or her work. 29 U.S.C. § 2612(a)(1)(C), (D); 29 C.F.R. § 825.112(a). The FMLA also protects workers who exercise their rights under the statute. It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The Eighth Circuit recognizes three distinct claims brought under the FMLA: "entitlement"[6] claims; "retaliation" claims; and "discrimination" claims. *Brown v. City of Jacksonville*, 711 F.3d 883, 890-91 (8th Cir. 2013); *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012). While it is not entirely clear, Plaintiff appears to bring all three claims, as she alleges in her Amended Complaint that she was "denied leave, her leave was interfered with, and she was retaliated against because of her attempt to take medical leave as prescribed under the FMLA." Doc. 14 at ¶¶ 26-27.

An employee may bring an entitlement claim when her employer "refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Pulczinski*, 691 F.3d at 1005. "An employee proceeding on this theory need not show that an employer acted with discriminatory intent." *Id*. An FMLA retaliation claim may be brought when "an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not take adverse action against the employee who [was] engaged in the opposition." *Id*. at 1006. An employee may sue for discrimination when her employer "takes

---

[6] Such claims were once labeled "interference" claims. However, the Eighth Circuit has instructed that the FMLA claim "formerly described as interference claims henceforth shall be called 'entitlement' claims." *Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 780 (8th Cir. 2013).

14

adverse action against [her] because [she] exercise[d] rights to which [s]he is entitled under the FMLA." *Id*. "In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised [her] statutory rights, the employer discriminated against [her] in the terms and conditions of employment. An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA." *Id*.

The FMLA is structured to not only grant leave rights to qualified employees, but also the right to restoration of their employment upon completion of the leave. *See* 29 U.S.C. § 2614(a)(1)(A). However, that does not mean that an employee may not be terminated while on leave; the FMLA is not a strict liability statute. *See Chappell v. Bilco Co*., 675 F.3d 1110, 1115 (8th Cir. 2012) ("Although an employee 'can prove interference with an FMLA right regardless of the employer's intent,' the FMLA 'is not a strict-liability statute.'") (quoting *Estrada v. Cypress Semiconductor, Inc*., 616 f.3d 866, 871 (8th Cir. 2010)). Therefore, if an employer had lawful reason to discharge an employee, the FMLA does not shield that employee on leave from such discharge. "As long as an employer can show a lawful reason," *i.e*., a reason not related to unlawful interference with or discrimination due to taking FMLA leave, "the employer will be justified to interfere with an employee's FMLA leave rights." *Throneberry v. McGee Desha Cnty. Hosp.,* 403 F.3d 972, 979 (8th Cir. 2005) ("[E]very discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge during FMLA leave by no means demand an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights.").

i. Retaliation Claim

The Court will first address Plaintiff's retaliation claim. As explained above, "[i]f an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not for that reason take adverse action against the employee who is engaged in the opposition." *Pulczinski*, 691 F.3d at 1005-06. Here, the adverse action alleged by Plaintiff was her termination. In order to prevail on her FMLA retaliation claim, then, Plaintiff must allege and demonstrate that prior to her termination, she opposed a practice made unlawful under the FMLA, or complained about a denial of FMLA leave. *See Ernst v. Wal-Mart Stores, Inc.*, No. 4:17CV2514 HEA, 2018 WL 2087254, at *2 (E.D. Mo. May 3, 2018). Plaintiff never opposed any practice made unlawful under the FMLA prior to her termination, nor did she complain during her employment that she was subjected to an illegal practice under the FMLA. Accordingly, her FMLA retaliation claim fails as a matter of law, and Defendant is entitled to summary judgment on that claim.

ii. Entitlement Claim

An entitlement claim arises when an employer refuses to authorize leave under the FMLA, or takes other action to avoid responsibility under the Act. *Pulczinski*, 691 F.3d at 1005; *see also Estrada*, 616 F.3d at 871 (An FMLA entitlement[7] claim occurs "when an employer's action deters or attached negative consequences to an employee's exercise of FMLA rights."). Defendant argues that it is entitled to summary judgment on this claim because Plaintiff was granted all the FMLA leave and benefits to which she was entitled, and she was terminated due to her failure to respond to the 10-Day Letter, and not to avoid employer responsibility under the Act. Plaintiff

---

[7] *Estrada* referred to the claim as one for "interference," as that was the preferred nomenclature at the time the decision was issued. However, as noted *supra*, the Eighth Circuit now refers to such claims as "entitlement" claims.

16

fails to address her FMLA entitlement claim in her memorandum in opposition to Defendant's motion for summary judgment. However, the Court must nonetheless consider whether Defendant has shown that it is in fact entitled to judgment as a matter of law on the claim as pled in the Amended Complaint.

It is undisputed that Plaintiff sought and received approved FMLA leave for the period between June 1, 2016, and June 14, 2016. Plaintiff provided the required DOL Certification form for that initial leave, and, upon compliance with that requirement, her leave was approved. However, when Plaintiff sought to extend her leave, Defendant required that Plaintiff provide another DOL Certification form for leave beyond June 14, 2016, and Plaintiff never did so. Defendant informed Plaintiff that her leave was only approved through June 14, 2016, and any leave beyond that would not be approved until Plaintiff submitted to Matrix an additional DOL Certification form. Plaintiff was informed on July 1, 2016, both by letter and telephone, that any leave beyond June 14 required additional documentation. See Doc. 38 at ¶¶ 17-52. Plaintiff was likewise repeatedly informed that any time off that was not approved could result in disciplinary action, up to and including termination.

An entitlement claim under the FMLA cannot succeed unless the plaintiff can show that she "gave h[er] employer adequate and timely notice." *Chappell v. Bilco Co.,* 675 F.3d 1110, 1116 (8th Cir. 2012). Such adequate notice may include an employer "require[ment] that a request for leave is supported by certification from a health care provider." *Id*. Here, Defendant has a consistently applied policy of requiring that certain documentation be submitted in order to obtain approved FMLA leave, Plaintiff failed to abide by the policy, and her termination was the eventual result when she also failed to timely respond to the 10-Day Letter.

17

Plaintiff seems to believe that she should be excused from the requirement to abide by company policy, both because she had other "paperwork" submitted, and because, even though she failed to communicate with Matrix as required, she did communicate by telephone with her supervisor, Ms. Whittaker, while she was out on medical leave. However, as discussed above, the other "paperwork" to which Plaintiff refers was not the required DOL Certification form. Additionally, Ms. Whittaker never indicated to Plaintiff that she had any authority to approve or extend her FMLA leave—and indeed, she had no authority to do so—but rather, directed Plaintiff to contact Human Resources for further information about FMLA leave. Because Plaintiff failed to provide Defendant with the required certifying documentation for FMLA leave after June 14, 2016, and did not respond when asked to do so, the Court concludes that her termination did not amount to interference under the FMLA. Accordingly, Defendant is entitled to summary judgment on Plaintiff's entitlement claim.

    iii.  Discrimination

A discrimination claim arises under § 2615(a)(1) "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Pulczinski*, 691 F.3d at 1006. Plaintiff maintains that she was terminated because she exercised her right to take FMLA leave. Absent direct evidence[8] of discrimination, the Court will evaluate Plaintiff's FMLA discrimination claim, like her ADA discrimination claim, under the *McDonnell Douglas* burden-shifting analysis.

---

[8] Plaintiff repeatedly asserts that she offers direct evidence of discrimination for the Court's consideration, (Doc. 40 at 5-7); however, she never explains what such evidence may entail, and the Court can find none in the record. The only "direct evidence" of discrimination cited by Plaintiff is the fact that she was off work for a medical condition when she was terminated. However, as noted previously, the FMLA is not a strict liability statute, and the mere fact that a discharge occurs while an employee is on leave does not mean an employer is automatically liable under the Act. "As long as an employer can show a lawful reason," *i.e.*, a reason not related to unlawful interference with or discrimination due to taking FMLA leave, "the employer will be justified to interfere with an employee's FMLA leave rights." *Throneberry v. McGee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005).

18

Plaintiff argues that the fact that her termination occurred while she was on medical leave demonstrates that she was fired not because she failed to respond to the 10-Day Letter, but rather, because of discriminatory intent. Plaintiff asserts that the temporal proximity between her taking leave and her termination proves that "Dollar General was . . . trying to justify her termination because she was injured and required an extended medical leave." *See* Doc. 40 at 9. However, "the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." *Throneberry,* 403 F.3d at 979. There is no evidence that Defendant terminated Plaintiff because she exercised her rights under the FMLA. Indeed, as argued by Defendant, the timeframe around her termination would seem to support the opposite conclusion. If Defendant were intent on discriminating or retaliating against Plaintiff for taking FMLA leave, it could have terminated her in early July of 2016, when her extended leave was initially denied for lack of proper authenticating paperwork. But instead of taking that course, Defendant worked with Plaintiff for months, communicating with her about her leave status, explaining what was needed to extend her leave, and finally terminating her only after she failed to respond to the 10-Day Letter, at which point she had been on unapproved leave for more than two months.

While Plaintiff may believe that the decision to terminate her was harsh or misguided, the Court is concerned only with whether Defendant discharged her *because* she exercised her rights under the FMLA. *See Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 927 (8th Cir. 2014) (Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions.") (quoting *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005). Additionally, Plaintiff's testimony does not support that her termination was due to discriminatory intent. When asked what actions Plaintiff believed were taken by Defendant in retaliation for taking FMLA

19

leave, she responded, "Termination." Doc. 38-1 at 29. When further asked, "Anything else?" she said, "No." *Id*. When asked what made her believe the termination was retaliatory, she simply stated, "Because they took my job away." *Id*. She further testified that no one associated with Defendant had ever made any negative comments about her taking FMLA leave. *Id*.

Here, Plaintiff has offered nothing to indicate that her termination was the result of discriminatory intent, rather than the result of Defendant's determination to fire her for failure to follow company policy. Therefore, Plaintiff's FMLA discrimination claim fails for the same reason that her ADA claim fails. Defendant has proffered a legitimate, nondiscriminatory reason for her termination, and Plaintiff has not shown that the reason proffered was but a pretext for discrimination. As such, Defendant is entitled to summary judgment on Plaintiff's FMLA discrimination claim as well.

## IV. CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on both Counts of Plaintiff's Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 36) is **GRANTED**.

The Court will issue a separate judgment consistent with this Memorandum and Order. Dated this 28th day of July, 2020.

/s/Jean C. Hamilton

JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE